**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

DR. TAMARA PACE-GLOVER PLAINTIFF

v. Case No. 4:26-cv-00141-LPR

BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS; ANDREA STEWART, in her individual capacity; and BRUCE MCGOWAN, in his individual capacity DEFENDANTS

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

After being off work for over a year, Dr. Tamara Pace-Glover returned to work at the University of Arkansas at Pine Bluff ("UAPB") in May of 2024 with accommodations for pregnancy-related disabilities that were mutually agreed to by the parties. Dr. Pace-Glover now brings a bevy of claims against the Board of Trustees of the University of Arkansas and employees Andrea Stewart and Bruce McGowan under various state and federal laws. Dr. Pace-Glover alleges that Defendants discriminated against her, failed to grant her accommodations, retaliated against her, and defamed her in connection with her approved requests for accommodations related to her pregnancy and use of the Family Medical Leave Act ("FMLA"). She seeks a variety of forms of monetary and non-monetary relief. But the alleged discriminatory and retaliatory actions took place months and years after any protected activity Dr. Pace-Glover engaged in.

Dr. Pace-Glover's Second Amended Complaint fails to state facts sufficient to support many of her causes of action, including: defamation; First Amendment retaliation; Pregnancy Discrimination Act ("PDA") retaliation; FMLA interference; FMLA retaliation; failure to accommodate under the Americans with Disabilities Act ("ADA"), Rehabilitation Act ("Rehab Act"), and Pregnant Workers Fairness Act ("PWFA"); disability discrimination under the ADA, Rehab Act, and Arkansas Civil Rights Act ("ACRA"); and hostile work environment under the ADA and Rehab Act. Therefore, Defendants are entitled to judgment as a matter of law on those claims.

**FACTUAL ALLEGATIONS**

Dr. Pace-Glover is currently employed as an Associate Professor in the Social Work Department at UAPB. Doc. 10, ⁋ 7. Dr. Pace-Glover was hired at UAPB in 2021 as the Chair of the Social Work Department. Doc. 10, ⁋ 11. In early April of 2023, Dr. Pace-Glover requested a temporary accommodation in the form of telecommuting for medical issues related to her pregnancy. Doc. 10, ⁋⁋ 15-16. Defendants approved Dr. Pace-Glover's temporary accommodation request. Doc. 10, ⁋ 16. In early May of 2023, Dr. Pace-Glover gave birth to her son and began approved FMLA leave. Doc. 10, ⁋ 19. Dr. Pace-Glover's twelve weeks of FMLA leave ended on or about July 28, 2023.[1] Dr. Pace-Glover did not return to work at the expiration of her FMLA leave. Doc. 10, ⁋ 20. After exhausting her FMLA leave, Dr. Pace-Glover received short-term and then long-term disability. Doc. 10, ⁋ 23. Dr. Pace-Glover alleges that in September and

[1] Dr. Pace-Glover alleges that she was out on FMLA leave continuously beginning in May of 2023. Based on this fact, her assertion in paragraph 20 of the Second Amended Complaint that she was still on FMLA leave in September of 2023 is incorrect.

October of 2023, Stewart inquired as to whether Dr. Pace-Glover was working another job and asked human resources personnel when Dr. Pace-Glover would be returning to work. Doc. 10, ¶¶ 20-21.

In April of 2024, after Dr. Pace-Glover had been absent from work for over eleven months, UAPB sent a letter to Dr. Pace-Glover instructing her to return to work. Doc. 1, ¶ 25. Grant Wangila, Dean of the Social Work Department and Dr. Pace-Glover's immediate supervisor, notified Dr. Pace-Glover that the Department could not continue without a Chair. Doc. 10, ¶ 27. UAPB worked with Dr. Pace-Glover to adjust her return-to-work date to a date that was acceptable to her. Doc. 10, ¶¶ 27, 31-32. Dr. Pace-Glover returned to work on May 20, 2024. Doc. 10, ¶ 32. Prior to her return to work, UAPB engaged in the interactive process with Dr. Pace-Glover, and approved disability accommodations were in place at the time she returned to work. Doc. 10, ¶¶ 31-32.

Stewart began serving as Interim Chancellor at UAPB on July 1, 2024. Doc. 10, ¶ 9. In the Fall of 2024, Dr. Pace-Glover instructed facilities management staff to clean and treat an office space that was not her office. Doc. 10, ¶¶ 37-39. Stewart advised Dr. Pace-Glover that her actions, including accessing the office, cutting locks, and damaging university property, were not approved. Doc. 10, ¶ 40. On November 25, 2024, after being advised by Stewart that her actions were not approved, Dr. Pace-Glover sent an email grievance to human resources alleging retaliatory and harassing

conduct by Stewart. Doc. 10, ⁋ 43.[2] On November 26, 2024, Wangila emailed Dr. Pace-Glover a letter removing her as Chair of the Social Work Department and reduced her salary by approximately $19,500. Doc. 10, ⁋⁋ 45-46. Wangila advised Dr. Pace-Glover that the demotion was done at the instruction of Stewart. Doc. 10, ⁋ 48. After her removal as Chair of the Social Work Department in November of 2024, Dr. Pace-Glover filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Doc. 10, ⁋ 73.

In January of 2025, Dr. Pace-Glover returned to her role as Associate Professor and also began performing the duties of Field Coordinator in the Social Work Department. Doc. 10, ⁋⁋ 51,54. The Field Coordinator role does not come with additional pay. Doc. 10, ⁋⁋ 51, 54. Dr. Pace-Glover alleges that she also continued to perform many of the administrative duties of the department chair without additional compensation. Doc. 10, ⁋ 51. On April 24, 2025, Dr. Pace-Glover filed a grievance again alleging retaliatory and harassing behavior by Stewart.[3] In the April 2025 grievance, Dr. Pace-Glover complained that Stewart interrupted a "professional conversation" Dr. Pace-Glover was engaged in at an off-campus event and made an unidentified disparaging comments about her. Doc. 10, ⁋ 68. Dr. Pace-Glover also alleges that Stewart "leaked confidential information regarding [her] grievances and personnel matters" to other employees and "spread false and defamatory rumors" about her. Doc. 10, ⁋⁋

[2] Dr. Pace-Glover does not provide details regarding the contents of the email grievance including whether she stated that she believed that alleged harassment was related to her use of disability accommodations or FMLA leave.

[3] Although Dr. Pace-Glover identifies this as a "third grievance," her Second Amended Complaint does not identify a second grievance.

71-72. Dr. Pace-Glover does not identify what information was leaked or to whom it was leaked.

On or about January 4, 2026, Dr. Pace-Glover was presented with a letter appointing her to the Field Coordinator role effective January 8, 2026. Doc. 10, ⁋ 57. Dr. Pace-Glover subsequently declined her supervisor's request that she sign a letter acknowledging that she had served in the role of Field Coordinator since January of 2025. Doc. 10, ⁋⁋ 58-59. On or about July 2, 2025, Dr. Pace-Glover applied for the Chair of the Social Work Department position from which she had been removed the previous November. Doc. 10, ⁋ 62. Dr. Pace-Glover states that she was not selected for the position, which is still unfilled. Doc. 10, ⁋ 65.

## STANDARD OF REVIEW

A party may move for judgment on the pleadings at any point "after the pleadings are closed." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is typically evaluated under Rule 12(b)(6)'s standard for deciding motions to dismiss. *Partridge v. City of Benton*, 929 F.3d 562, 564 (8th Cir. 2019). The standard for dismissal under Rule 12(b)(6), in turn, requires the plaintiff to allege enough factual content in the complaint—as opposed to "conclusory allegations"—to render the claim for relief "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). A motion for judgment on the pleadings is an appropriate vehicle for considering an affirmative defense that "clearly is established in the pleadings." 5B Charles A. Wright et al., *Federal Practice & Procedure* § 1368 (3d ed. April 2021 Update).

In reviewing motions under Rule 12(b)(6) and Rule 12(c), the court is not limited to the four corners of the complaint. Wright et al., *supra*, § 1357. At the motion-to-dismiss stage, for example, courts routinely consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Id.* "[T]hese items may be considered by the district judge without converting the motion to one for summary judgment." *Id.*; *see also Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Faibisch v. University of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) ("An EEOC charge is part of the public record, and thus the motion to dismiss was not converted to one for summary judgment by the attachment of a copy of the EEOC charge."). Similarly, on a motion for judgment on the pleadings, a court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## ARGUMENT

### I. Dr. Pace-Glover failed to state a claim for defamation.

Dr. Pace-Glover has failed to state facts sufficient to support a claim of defamation against Stewart or McGowan. In order to establish a claim of defamation, a party must prove the following elements: (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the

publication; (5) the statement's falsity; and (6) damages. *Southall v. Little Rock Newspapers, Inc.*, 332 Ark. 123, 132–33, 964 S.W.2d 187, 192–93 (1998) (internal citations omitted).

Dr. Pace-Glover fails to identify any statement made by either Stewart or McGowan that she believes was defamatory, instead making a general reference to Stewart's conduct "as alleged above" in the preceding 23 pages of her Second Amended Complaint. Dr. Pace-Glover's defamation claim against McGowan must be dismissed because he cannot be held liable for defamation based on statements made by Stewart. In addition, nowhere in the Second Amended Complaint does Dr. Pace-Glover identify any statement of fact made by McGowan, defamatory or otherwise.

In paragraph 72 of the Second Amended Complaint, Dr. Pace-Glover alleges that Stewart "has spread false and defamatory rumors about Plaintiff, including the unfounded allegations regarding property damage…" Doc. 10, ⁋ 72. Presumably, this is the allegation "above" upon which Stewart bases her defamation claim against Stewart. Dr. Pace-Glover alleges that in the Fall of 2024, "Stewart falsely accused Plaintiff of cutting locks, breaking into an abandoned office, and damaging university property." Doc. 10, ⁋⁋ 37-40. Dr. Pace-Glover's defamation claims must be dismissed because they are barred by the applicable statute of limitations. Under Arkansas law, actions for defamation must be brought within one year. Ark. Code Ann. § 16-56-104. Dr. Pace-Glover filed her original complaint on February 9, 2026, more than 14 months after Stewart made the allegedly defamatory statements.

Moreover, even assuming Dr. Pace-Glover's allegations are true, they fail to support a claim for defamation. First, there is no allegation in the Second Amended Complaint that Stewart published the statement as required for defamation. Additionally, Dr. Pace-Glover failed to allege specific facts regarding actual damages as required to state a claim for defamation. Rather, she makes only conclusory allegations that she has suffered a laundry list of damages including humiliation and reputational harm. These conclusory allegations are not sufficient to sustain a claim for defamation. See *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 957, 69 S.W.3d 393, 403 (2002) (dismissing claim where plaintiff pled only conclusory allegations of reputational harm). Dr. Pace-Glover's defamation claim should be dismissed.

**II. Dr. Pace-Glover's First Amendment claims must be dismissed.**

Dr. Pace-Glover's First Amendment retaliation claims must be dismissed because her purportedly protected speech was not on a matter of public concern. To state a claim for retaliation based on the First Amendment, Dr. Pace-Glover, who is a public employee, must show that (1) she engaged in protected speech; (2) her interest as a citizen in making such speech outweighs the employer's interest in promoting efficient public service; and (3) her speech was a motivating factor in the adverse action taken against her. *Johnson v. Arkansas State Hosp.*, No. 4:05CV00794 SWW, 2007 WL 707341 (E.D. Ark. Mar. 5, 2007) (not reported) (internal citations and quotations omitted).

Public employee speech is only protected from retaliation if it is on a matter of public concern. When the state is acting as the employer of a public employee, the question is whether the employee spoke in the role of a concerned citizen "informing the public that the state institution is not properly discharging its duties…or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution." *Bailey v. Dep't of Elementary & Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006). Dr. Pace-Glover's internal grievances and EEOC charge allegations as described in her Second Amended Complaint fall squarely within the latter category of unprotected speech. Dr. Pace-Glover's complaints pertained solely to treatment she alone was purportedly subjected to by one, or possibly two, specific employees whom she alleged acted with retaliatory animus.

Moreover, there is no causal connection between Dr. Pace-Glover's filing of an EEOC charge form and any adverse action she subsequently alleges. Dr. Pace-Glover alleges the same four discrete acts that could be construed as retaliation to support all of her causes of action: she was demoted from the Chair position in November of 2024; she was required to continue to performing duties of Chair after returning to faculty in January of 2025; she was required to perform the role of Field Coordinator without additional pay beginning in January of 2025; and she was not re-awarded the Chair position when she re-applied less than a year later in July of 2025. [4]

[4] Although Dr. Pace-Glover also alleges that she was subjected to a hostile work environment, as explained below in Section IX, the conduct alleged fails to rise to the level of an adverse action.

Dr. Pace-Glover does not provide any evidence of retaliatory intent beyond temporal proximity of the protected activity and the purported adverse actions. Generally, more than a temporal connection is required to support an inference of discrimination. *Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006) (internal quotation and citation omitted). And even assuming temporal proximity alone is sufficient, it does not exist here. The Eighth Circuit has held that while a two-week interval is sufficient (but barely so), two months is not. *Johnson v. Arkansas State Hosp.*, No. 4:05CV00794 SWW, 2007 WL 707341 (E.D. Ark. Mar. 5, 2007) (not reported). Dr. Pace-Glover's demotion occurred prior to her filing any EEOC charges. And she admits that she did not reapply for the chair position until July 1, 2025. To the extent that being required to perform chair and field coordinator duties without extra compensation can be construed as adverse actions for First Amendment purposes, those actions did not occur until January of 2025, when Dr. Pace-Glover returned to the position of Associate Professor.

Dr. Pace-Glover has failed to plead facts showing a temporal proximity between her filing of an EEOC charge and any adverse action. And neither her internal grievances nor her EEOC charges were on a matter of public concern. Therefore, Dr. Pace-Glover's First Amendment claim must be dismissed.

## III. Dr. Pace-Glover's pregnancy discrimination and retaliation claims must be dismissed.

The facts alleged by Dr. Pace-Glover do not show a causal connection between her pregnancy, childbirth, or related medical conditions and the purportedly adverse actions identified in her Second Amended Complaint. Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e–2000e–17, prohibits discrimination in employment on the basis of sex. As amended by the Pregnancy Discrimination Act of 1978 ("PDA"), sex-based discrimination under Title VII includes discrimination based on "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The Arkansas Civil Rights Act contains a comparable provision, which is to be interpreted consistent with the PDA. *Greenlee v. J.B. Hunt Transport Servs.,* 2009 Ark. 506. The PDA "does not create substantive rights to preferential treatment." *Deneen v. Nw. Airlines, Inc.*, 132 F.3d 431, 436 (8th Cir. 1998).

To state a claim for discrimination or retaliation under the PDA, Dr. Pace-Glover must either identify direct evidence of discrimination, or state facts giving rise to an inference of discrimination. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011). Such an inference arises when it is more likely than not that the employer's actions were based on unlawful discrimination. *See Wallin v. Minn. Dept. of Corr.,* 153 F.3d 681, 687 (8th Cir.1998). She must also identify an adverse employment action against her. *Wierman v. Casey's Gen. Stores*, 638 F.3d at 993. She has failed to do so.

Dr. Pace-Glover admits that she was granted the accommodations she requested related to her pregnancy in April of 2023. Doc. 10, ¶¶ 15-16. Although she alleges that Stewart "attempted to reverse the approved accommodation," she does not allege that Stewart's "attempt" was successful. Doc. 10, ¶ 17. Even assuming Dr.

Pace-Glover's allegations are true, "attempted" interference with an approved accommodation that was provided to an employee is not an adverse action that violates the PDA.

Presumably, Dr. Pace-Glover intends to rely on the timing of her PDA protected activities compared to the purportedly adverse actions. But the remaining allegedly discriminatory and retaliatory treatment occurred well over a year after she gave birth and approximately six months after she last requested accommodations. Dr. Pace-Glover gave birth in May of 2023 and was off work until May of 2024. Doc. 10, ⁋⁋ 15-16. Before she returned to work in May of 2024, Dr. Pace-Glover was, again, provided with the accommodations she requested. Doc. 10, ⁋ 32. And the first act of retaliation Dr. Pace-Glover identifies upon her return is her November 2024 demotion. As stated above in Section II, even an interval of two-months between the protected activity and the adverse action is insufficient to support an inference of discrimination. The facts alleged by Dr. Pace-Glover do not constitute direct evidence of pregnancy-related discrimination or retaliation, nor do they permit such an inference. Therefore, her pregnancy-related discrimination and retaliation claims under the PDA and ACRA must be dismissed.

## IV. Dr. Pace-Glover's FMLA interference claims fail as a matter of law.

Dr. Pace-Glover's FMLA interference claims against Stewart and McGowan must be dismissed because she admits that Defendants approved her request for FMLA leave and allowed her to take that leave unrestrained. To succeed on her FMLA interference claim, Glover must show that: (1) she was an eligible employee;

(2) Defendants were an employer as defined by the FMLA; (3) she was entitled to FMLA leave; (4) she gave Defendants notice of her intent to take FMLA leave; and (5) Defendants denied her FMLA benefits to which she was entitled. *Brandt v. City of Cedar Falls*, 37 F.4th 470, 478–79 (8th Cir. 2022) (internal citations omitted). In addition, Dr. Pace-Glover must show that she is entitled to damages or injunctive relief. *Id*. Remedies available under the FMLA are limited to "compensation and benefits lost 'by reason of the violation,' ... other monetary losses sustained 'as a direct result of the violation,'... and 'appropriate' equitable relief, including employment, reinstatement, and promotion." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) (citations omitted).

The Eighth Circuit has held that although FMLA interference includes discouraging employees from using FMLA leave, the employee must also show that the employer denied the employee entitlements under the FMLA. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 753 (8th Cir. 2011). *See also Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1007 (8th Cir. 2012) (rejecting plaintiff's theory that he need not show that employer's actions actually deterred him from taking leave, so long as an employee of ordinary firmness would have been discouraged). Dr. Pace-Glover has failed to do so.

Dr. Pace-Glover admits that she requested, was granted, and exercised the entirety of the twelve weeks off from work that she is entitled to under the FMLA. In fact, she admits that she continued to be off of work for an additional nine months after the expiration of her FMLA leave. Instead, Dr. Pace-Glover bases her FMLA

interference claim on her conclusory allegations that Stewart "attempted to reverse" her pre-FMLA pregnancy accommodations, asked HR staff when she would be returning from FMLA, inquired with HR as to whether she had secondary employment, sent her "confusing" communications regarding her return to work, and somehow created a hostile work environment while she was not even at work.

The factual allegations in Dr. Pace-Glover's Second Amended Complaint do not support her conclusion that any of the purported actions interfered with her use of FMLA. Dr. Pace-Glover admits that some of the purported actions occurred prior to her request for FMLA leave, and others occurred many months after she exhausted her FMLA leave and returned to work. Those facts do not constitute FMLA interference. The single action that Dr. Pace-Glover alleges occurred during the time she was on leave was one phone call from HR inquiring as to whether she was working outside employment that occurred after her FMLA leave was exhausted. Although Dr. Pace-Glover alleges that Stewart made other inquiries to HR staff about Dr. Pace-Glover's leave status, she does not allege that HR staff contacted her or otherwise interfered with her use of FMLA leave on those occasions.

Additionally, Dr. Pace-Glover's FMLA interference claim against McGowan must be dismissed because all of her allegations regarding FMLA interference pertain to conduct by Stewart, not McGowan. Moreover, Dr. Pace-Glover has not identified any damages available to her based on her FMLA interference claim. She admits that when she finally returned to work, it was in the same position she held prior to

using FMLA leave. Because Dr. Pace-Glover has not stated facts showing that Defendants denied her FMLA benefits to which she was entitled resulting in recoverable damages, her FMLA interference claim must be dismissed.

## V. Dr. Pace-Glover's FMLA retaliation claims fail as a matter of law.

Dr. Pace-Glover has failed to allege facts sufficient to show that any materially adverse employment action she suffered was causally linked to her use of FMLA. To establish a prima facie case of FMLA retaliation, Dr. Pace-Glover must show: "1) she engaged in protected conduct; 2) she suffered a materially adverse employment action; and 3) the materially adverse employment action was causally linked to the protected conduct." *Brandt v. City of Cedar Falls*, 37 F.4th 470, 480 (8th Cir. 2022). For purposes of a retaliation claim, an adverse employment action is one that is materially adverse, meaning that it causes significant harm. *See Warren v. Nucor Corp.*, No. 24-1132, 2025 WL 2600734, at *4 (8th Cir. Sept. 9, 2025) (citing *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 357 (2024) (explaining that Title VII's anti-retaliation provision "applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm") (internal citations omitted).[5] "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Wedow v. City of Kansas City, Mo.,* 442 F.3d 661, 671 (8th Cir.2006) (quoting *Sallis v. Univ. of Minn.,* 408 F.3d 470, 476 (8th Cir.2005)). "'Mere inconvenience without any decrease in title, salary, or benefits' or that results

---

[5] The Eighth Circuit has held that the "materially adverse" standard for Title VII retaliation claims also applies to FMLA retaliation claims. *See Quinn v. St. Louis County,* 653 F.3d 745, 754 n. 9 (8th Cir. 2011).

only in minor changes in working conditions does not meet this standard." *Id.* (quoting *Sallis,* 408 F.3d at 476).

Of the four purportedly adverse employment actions identified by Dr. Pace-Glover, only two of them, demotion and failure to promote, meet the materially adverse standard under the FMLA, and none of them are causally linked to her use of FMLA. Dr. Pace-Glover's allegations that since returning to the role of Associate Professor in November of 2024, she has continued performing some of the duties of chair and that she has been assigned Field Coordinator duties both without additional compensation, do not constitute a material employment disadvantage within the meaning of the FMLA. And ss explained below in Section IX, the facts pled by Dr. Pace-Glover fail to show that she was subjected to an actionable hostile work environment under any legal theory. Even if they did, the amount of time that elapsed between the expiration of her FMLA leave and all of the purportedly adverse actions is too long to create a causal link between the two.

Dr. Pace-Glover relies solely on temporal proximity to establish a causal connection between her use of FMLA and all of the allegedly retaliatory acts. But temporal proximity alone is rarely enough to establish a causal connection. *See Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006). *But cf. Boston*, 75 F.4th at 869 ("Generally, more than mere temporal proximity between protected activity and adverse action is required."). Moreover, the allegedly retaliatory acts occurred between fifteen and twenty-three months after her last use of FMLA leave, which is far too long to create a causal link. See *Johnson v. Arkansas State Hosp.*, No. 4:05CV00794

SWW, 2007 WL 707341 at *4 (quoting *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) and *Lewis v. St. Cloud State University*, 467 F.3d 1133, 1138 (8th Cir. 2006)). According to Dr. Pace-Glover, she began continuous FMLA leave in May of 2023, meaning her twelve weeks of protected leave was exhausted in August of 2023. Doc. 10, ⁋ 19. After her FMLA entitlement was exhausted, Dr. Pace-Glover states that she remained out on other leave until May of 2024. Doc. 10, ⁋⁋ 23, 32. That timing precludes a finding of retaliation based in whole or in part on temporal proximity. And although Dr. Pace-Glover states that she "filed a formal grievance" on November 25, 2024 for which she was subjected to retaliation, she does not allege that the grievance alleged retaliation based on her use of FMLA leave over a year earlier. Any such allegation would be disingenuous given that her last use of FMLA leave occurred over a year earlier.

Because Dr. Pace-Glover has failed to state facts showing the purportedly retaliatory acts she identified were causally connected to her use of FMLA leave, her FMLA retaliation claims must be dismissed. Additionally, Dr. Pace-Glover's claims against McGowan must be dismissed because she fails to state any facts showing he engaged in FMLA retaliation against her.

## VI. Dr. Pace-Glover's FMLA claims are untimely.

Even if Dr. Pace-Glover had stated claims for FMLA interference and retaliation, the applicable statute of limitations bars those claims. An action asserting an FMLA violation usually must be brought not later than two years after the last event constituting the alleged violation. 29 U.S.C. § 2617(c)(1). The period of limitations is

extended to three years in the case of a "willful violation." 29 U.S.C. § 2617(c)(2). The statute does not define "willful," nor has the Supreme Court done so in a FMLA case. See *Samuels v. Kansas City Missouri School District,* 437 F.3d 797, 803 (8th Cir.2006). Adopting the definition of "willful" articulated by the Supreme Court for cases arising under the Fair Labor Standards Act, the Eighth Circuit has held that to establish willfulness a plaintiff must show that the employer either knew or showed reckless disregard for the matter of whether the FMLA prohibited the employer's conduct. *Hanger v. Lake County,* 390 F.3d 579, 583 (8th Cir.2004) (internal citations omitted). An employer's knowledge that the FMLA is "in the picture," however, does not, in itself, show willfulness. *Hanger,* 390 F.3d at 584; *Samuels,* 437 F.3d at 803. *Drye v. Univ. of Arkansas for Med. Scis. ex rel. Univ. of Arkansas Bd. of Trs.*, No. 4:09CV00922 JLH, 2011 WL 4434232, at *6 (E.D. Ark. Sept. 23, 2011), *aff'd sub nom. Drye v. Univ. of Arkansas for Med. Scis.*, 469 F. App'x 495 (8th Cir. 2012).

Dr. Pace-Glover filed her original complaint on February 9, 2026. Doc. 1. Therefore, any claims based on non-willful actions that occurred prior to February 9, 2024, are time-barred. That encompasses all of the alleged actions that could support Dr. Pace-Glover's FMLA claims. Although Dr. Pace-Glover did not return to work until May of 2024, she began her FMLA leave in early May of 2023 and used it continuously until it was exhausted in late July of 2023. Dr. Pace-Glover relies solely on temporal proximity to tie the allegedly discriminatory and retaliatory actions to the purportedly adverse actions she identified. But only actions taken within a few weeks of a protected activity can establish a temporal connection. Any actions taken on or

after February 9, 2024, are not temporally connected to Dr. Pace-Glover's use of FMLA. And none of the allegations in the Second Amended Complaint support a finding that any of Defendants' alleged actions in violation of the FMLA were willful. Therefore, Defendants are entitled to judgment as a matter of law on Dr. Pace-Glover's FMLA claims.

## VII. Dr. Pace-Glover's disability discrimination claims fail as a matter of law.

Dr. Pace-Glover's disability discrimination claims under the ADA, the Rehab Act, and the ACRA must be dismissed for failure to state facts supporting a prima facie case. The ADA prohibits employers from discriminating against a disabled individual qualified for a job because of the disability of such individual. 42 U.S.C.A. § 12112(a). To establish a prima facie case of disability discrimination, a plaintiff must show (1) that he or she was disabled; (2) that he or she was qualified to do the essential job functions with or without reasonable accommodation; and (3) that he or she suffered an adverse action due to his or her disability. *Alexander v. E. Tank Servs., Inc.*, 2016 Ark. App. 544, 505 S.W.3d 239, 245 (2016). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id*. ACRA and Rehab Act disability discrimination claims are analyzed under the same principles as ADA claims. *See Johnson v. Windstream Communications, Inc.*, 2012 Ark. App. 590 ("[C]ourts evaluate disability claims presented under ACRA by using the same principles employed in analyzing claims under the ADA"; *Downing v. Dep't of Fin. & Admin.*, No. 4:15-CV-570-DPM, 2017 WL 1433305, at *1 (E.D. Ark. Apr. 20, 2017) (The

ADA and Rehab Act claims are analyzed the same way; cases about each statute are instructive on the other one.).

Dr. Pace-Glover failed to plead facts demonstrating that discriminatory animus based on her disabilities was the reason for any adverse action allegedly taken by Defendants. An adverse action by itself is not sufficient for a successful claim under the ADA. *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 990-91 (8th Cir. 2007). There must be a "specific link" between the discrimination and the adverse action. *Id. See also James v. George's, Inc.*, 2022 Ark. App. 244, 5, ("…a claimant must demonstrate "a 'specific link' between the alleged discriminatory animus…and the adverse decision sufficient to show that the discriminatory animus actually motivated the adverse decision…").

The facts pled by Dr. Pace-Glover do not include direct evidence of discrimination. Instead, Dr. Pace-Glover relies solely on temporal proximity as the causal link between her disabilities and the alleged adverse actions. But as explained above in Section II, in order for temporal proximity alone to establish a causal connection, the proximity must be very close – meaning weeks, not months apart. Dr. Pace-Glover identified four allegedly adverse actions which occurred between five and twenty months after she disclosed her disabilities.[6] In April of 2023, Dr. Pace-Glover sought temporary accommodations for pregnancy-related conditions, which were granted. Dr. Pace-Glover next sought and was granted accommodations for

[6] Dr. Pace-Glover does not state what her disabilities were other than that they were "pregnancy-related." It is unclear from her Second Amended Complaint whether the disabilities were temporary or permanent, or the extent to which they affected her ability to perform a major life activity and Defendants reserve the right to raise this issue in future pleadings.

pregnancy-related conditions in May of 2024. Dr. Pace-Glover does not allege that she disclosed any disabilities after this date. The allegedly adverse actions occurred on November 26, 2024 (demotion from Chair of the Social Work Department and requiring her to continue performing chair duties without compensation), January 1, 2025 (required to perform Field Coordinator duties without compensation), and July of 2025 (not selected for position of Chair of the Social Work Department). There are no factual allegations showing these actions were causally linked, directly or temporally, to Dr. Pace-Glover's disabilities.

Although Dr. Pace-Glover identified other purportedly harassing acts that occurred before November of 2024, none of those acts independently constitutes an adverse action. And explained below in Section IX, even taken as a whole, the purportedly harassing acts do not rise to the level of an actionable hostile work environment. Because Dr. Pace-Glover has not stated facts showing a causal link between the allegedly adverse actions and her disabilities, Defendants are entitled to judgment as a matter of law on her disability discrimination claims.

## VIII. Dr. Pace-Glover's failure to accommodate claims fail as a matter of law.

Dr. Pace-Glover admits that Defendants engaged in the interactive process on the two occasions that she requested accommodations. She also admits that the process resulted in approval of her requested accommodations on both occasions. Therefore, her failure to accommodate claims under the ADA, Rehab Act, and PWFA must be dismissed. The ADA and Rehab Act are similar in substance and analyzed the

same way, and "cases interpreting either are applicable and interchangeable." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). And the few courts that have entertained PWFA claims have treated them like failure-to-accommodate claims under the ADA as well. See *Payne v. W. Michigan Univ.*, 811 F. Supp. 3d 889, 901 (W.D. Mich. 2025), *appeal dismissed*, No. 25-2137, 2026 WL 735242 (6th Cir. Feb. 2, 2026) (citations omitted).

To sustain a failure to accommodate claim, Dr. Pace-Glover "must establish both a prima facie case of discrimination based on her disability and a failure to accommodate it." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016) (quoting *Schaffhauser v. United Parce Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015)). In addition, she must show that Defendants failed to engage in the interactive process in a good-faith manner. *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 457 (8th Cir. 2022). To establish that Defendants failed to participate in the interactive process, Dr. Pace-Glover must demonstrate that Defendants knew about her disability, that she requested an accommodation for her disability, and that Defendants "did not make a good faith effort to assist the employee in seeking accommodations." *Id.* (quoting *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999)). As explained above in Section VII, Dr. Pace-Glover has failed to state facts that establish a prima facie case of disability discrimination. She has also failed to show that Defendants did not engage in the interactive process, or even that she requested any accommodation that was not granted.

Dr. Pace-Glover states that she first sought pregnancy-related accommodations in April of 2023 prior to giving birth when she requested and was granted a temporary telecommuting accommodation. Doc. 10, ⁋⁋ 15-16. Although she alleges that Stewart "attempted to reverse" the accommodation, she does not allege that Stewart's "attempt" was successful. Dr. Pace-Glover states that she requested accommodations a second time in May of 2024 when she was notified that it was necessary for her to return to work after being off for approximately one year. Dr. Pace-Glover states that prior to returning to work, she met with Tonisha Davis and Wangila to discuss her return to work, and that that she ultimately returned to work on May 20, 2024 with approved accommodations. Doc. 10, ⁋⁋ 31-32.

Dr. Pace-Glover has not identified any other accommodations sought by her. And although Dr. Pace-Glover makes the conclusory allegation that Defendants failed to engage in the interactive process, she provides no factual support for her conclusion. On the contrary, Dr. Pace-Glover admits that Tonisha Davis and Wangila met with her for the specific purpose of discussing her return to work and that the meeting resulted in accommodations that allowed her to return to work. And despite her conclusory statement that some unidentified accommodation she did not request would have allowed her to continue performing as Chair of the Social Work Department, Dr. Pace-Glover admits that the accommodations she was provided enabled her to satisfactorily perform her job. Doc. 10, ⁋⁋ 7, 13. Therefore, Defendants are entitled to judgment as a matter of law on Dr. Pace-Glover's failure to accommodate claims.

## IX. Dr. Pace-Glover has failed to state facts showing a hostile work environment.

The allegations in Dr. Pace-Glover's Complaint do not support her conclusory allegation that she was subjected to a hostile work environment in violation of the ADA or Rehab Act. To establish a hostile work environment claim, Dr. Pace-Glover must plead facts showing that: (1) she is a member of a protected class (2) she was subject to unwelcome harassment (3) the harassment resulted from her membership in the protected class and (4) the harassment was severe enough to affect the terms, conditions, or privileges of [her] employment. *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 921–23 (8th Cir. 2018). Not all unpleasant conduct creates a hostile work environment. *Williams v. City of Kansas City, Missouri*, 223 F.3d 749, 753 (8th Cir. 2000). Rather, the plaintiff must show that he or she was singled out because of [membership in a protected class] and that the conduct was severe and pervasive. *Id.*; *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997).

To determine whether the harassment affected a term, condition, or privilege of Dr. Pace-Glover's employment, courts consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with Dr. Pace-Glover's job performance. *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (quoting *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003) (quoting *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010). "The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." *Al-Zubaidy v. TEK*

*Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). "The stringent hostile work environment standard is designed to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language...and occasional teasing.'" *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1083 (8th Cir. 2010) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ), *abrogated on other grounds by Torgerson*, 643 F.3d at 1043. "[M]erely rude or unpleasant" conduct are insufficient "to affect the terms and conditions of employment." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010) (quoting *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003)). The plaintiff must show "that the alleged harassment was so intimidating, offensive, or hostile that it 'poisoned the work environment.'" *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999) (quoting *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 214 (7th Cir. 1986) ). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (citation omitted).

Dr. Pace-Glover failed to meet her pleading burden. As explained above in Section VII, Dr. Pace-Glover has failed to show that her demotion, requiring her to perform chair duties without compensation, requiring her to assume the role of Field Coordinator without compensation, and failure to promote her back to the Chair position were causally linked to her membership in a protected class under the ADA or the Rehab Act. The same is true of the remaining factual allegations in her Second

Amended Complaint. Dr. Pace-Glover does not state any facts showing direct evidence that any of the allegedly harassing treatment she complains of was based on her request for or temporary use of accommodations under the ADA or Rehab Act. And the gap in time between Dr. Pace-Glover's request for temporary accommodations and the allegedly harassing acts precludes finding a link based on temporal proximity. Over five months passed between Dr. Pace-Glover's first request for accommodations in April of 2023 and the first allegedly hostile acts she identifies, namely Stewart's questioning of HR in September of 2023 as to whether Dr. Pace-Stewart was working a second job and her expected return to work date. Similarly, over six months passed between Dr. Pace-Glover's second request for accommodations in May of 2024 and the majority of the allegedly hostile acts she complains about, which began with her demotion in November of 2024. Therefore, she has failed to meet the third element of a hostile work environment claim.

Moreover, the remaining factual allegations do not rise to the level of actionable harassment. Dr. Pace-Glover alleges that following occurred over period of approximately two years: suggested she should take FMLA leave rather than work remotely; Stewart inquired with HR as to whether she was working another job and when she was scheduled to return to work while she was out on FMLA; provided conflicting information about her return to work after being out for a year; Stewart "inserted herself" into a conversation about her return to work; Stewart asked her if she still wanted to be an administrator; held a retreat where FMLA leave and pregnancy-related matters were discussed; Stewart falsely accused her of cutting

locks and damaging UAPB property and "leaked" those accusations to others; required her to continue performing duties of Chair after her demotion; assigned her the role of Field Coordinator without additional compensation; Stewart interrupted a professional conversation and made unidentified disparaging remarks about her; McGowan removed her personnel file from her hands; asked her to sign a letter confirming she was performing the Field Coordinator role; and offered her a one-time payment for her Field Coordinator duties.

These allegations describe the type of acts courts have characterized as "rude or unpleasant," but not "severe enough to affect the terms, conditions, or privileges of employment." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 921–23 (8th Cir. 2018). The Eighth Circuit has stated that verbal harassment alone rarely rises to the level of actionable conduct. See *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003). In *Shaver*, the Eighth Circuit found that allegations the plaintiff's co-workers and supervisors routinely called him "platehead," suggested that he was stupid, and said that he "pissed his pants when the microwave was on," were insufficient to sustain a hostile work environment claim. *Id*. Similarly, in *Moses v. Dassault Falcon Jet-Wilmington Corp*, the Eighth Circuit declined to find a hostile work environment where the plaintiff's supervisors had taken his tools away and hid them, falsely accused him of being drunk at work, and told him he "better watch it" because he was making everybody look bad. *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d at 922-923. The Eighth Circuit has also declined to find sufficient evidence of a hostile work environment where the plaintiff alleged isolated

incidents of being berated and spit on by his supervisor in addition to being given too much work, wrongfully blamed for a failed audit, and generally mistreated his supervisor. *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015).

Additionally, the Eighth Circuit has declined to find the existence of a hostile work environment where, as here, an employee is able to perform her duties at work despite the allegedly harassing conduct. See *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 779 (8th Cir. 2012). The factual allegations pled by Dr. Pace-Glover fall squarely within the kind of conduct the Eighth Circuit has declined to find sufficient to support a claim for a hostile work environment. Therefore, Dr. Pace-Glover's hostile work environment claims should be dismissed.

## X. Conclusion

For the foregoing reasons, the Court should enter judgment on the pleadings in favor of Defendants.

Respectfully submitted,

UNIVERSITY OF ARKANSAS SYSTEM
OFFICE OF THE GENERAL COUNSEL

Amber Schubert (Ark. Bar No. 2009150)
Associate General Counsel
University of Arkansas System
2404 N. University Ave.
Little Rock, AR 72207-3608
(501) 686-2518
aschubert@uasys.edu

*Attorney for Defendants*